## Farkaly v. Allstate Insurance Co.

*Richard S. Campagna,* for plaintiff.
*Joseph P. Lenahan,* for defendant.

WALSH, *Chancellor,* September 21, 1981—In August, 1978, plaintiff, Margaret Farkaly, was employed by the Baltimore Life Insurance Company. Supposedly, while on a business assignment from her employer, plaintiff was involved in an automobile accident on August 23, 1978, as a result of which, plaintiff is alleged to have suffered some permanent disability. Although plaintiff was driving her own personal automobile at the time of the accident, she was operating within the scope of her employment. Consequently, plaintiff was covered by the Workmen's Compensation Act, which paid all of her medical bills, and provided plaintiff with weekly benefit payments.

At the time of the accident, plaintiff also held a private insurance policy, issued by defendant, Allstate Insurance Company, which provided for all of the benefits as required by the Pa. No-fault Insurance Act, 40 P.S. § 1009.101, et seq.

Initially, plaintiff filed suit against her private insurance carrier, Allstate, claiming that she is entitled to receive the difference between the $1,000 monthly wage loss benefit as provided for under the No-fault Act, and the amount which she was currently receiving every month under the Workmen's Compensation Act.

Subsequently, plaintiff amended her complaint to the effect that her average monthly income prior to the accident was $1,413.40, and that she is entitled to receive from defendant, the difference between said figure and the amount which she is currently receiving in monthly payments under Workmen's Compensation.

Defendant has filed an answer to plaintiff's complaint, and by way of new matter, has alleged that the statute of limitations has run. Plaintiff has replied denying the same. Thereafter, on April 14, 1981, plaintiff filed a motion for judgment on the pleadings, setting forth the following:

(1) That defendant's responses to plaintiff's complaint constitute an admission to every allegation contained therein;

(2) That since plaintiff was not driving her employer's automobile at the time of the accident, she is entitled to No-fault benefits as a matter of law, in addition to Workmen's Compensation benefits;

(3) Where plaintiff is receiving Workmen's Compensation benefits, the proper computation of No-fault wage loss benefits is the difference between plaintiff's average monthly wage at the time of the accident and the amount which plaintiff is currently

receiving in monthly payments under Workmen's Compensation.

In response to this motion, defendant has alleged:

(1) That all of the material factual allegations of plaintiffs complaint are, indeed, admitted and the court should review this as a case stated or a motion for summary judgment.

(2) Plaintiff is not entitled to no-fault benefits as a matter of law because plaintiff is already receiving workers' compensation benefits.

(3) If the plaintiff is entitled to no-fault benefits, the computation of those benefits is governed by Section 206 of the No-fault Act and the Wagner decision.

The rules which govern when considering a Motion for Judgment on the Pleadings were accurately stated in the case of Pa. Gas & Water Co., et al v. Kassab et al., 14 Commw. 564, 322 A.2d 775 (1974):

"Like all summary judgments entered without a trial, judgment on the pleadings may be entered only in clear cases and where there are no issues of fact. The court is to construe the pleadings alone, drawing all the inferences and assuming all the concessions which would apply in the ruling on a demurrer. The party moving for the judgment on the pleadings admits for the purpose of his motion the truth of all allegations of his adversary and the untruth of any of his own allegations which have been denied by his adversary. Nor may averments by the moving party in a pleading automatically at issue, which need not be denied, be accepted as true."

Id at 568, 322 A.2d at 777, citing Goodrich-Amram Procedural Rules Service, Section 1034(b) 1 at p. 411.

In the case at hand, defendant in his brief, has admitted all of the material allegations of plaintiff's

complaint, and in essence, contends that based on those facts, plaintiff is not entitled to the relief requested. Thus, we see no need to discuss plaintiff's initial argument.

The next issue which this court must address is "Whether a motor vehicle accident victim injured while driving her own automobile, but within the scope of her employment, is entitled to receive work-loss benefits from her no-fault insurance carrier to make up the difference between her actual wage loss and benefits conferred on her under the Workmen's Compensation Act?"

This precise issue was addressed in the case of Adams v. Nationwide Insurance Co., 285 Pa. Super. 79, 426 A.2d 1150 (1981). In ther, Richard Adams was employed as a zone manager for Standard Motor Products and was acting within the scope of his employment, when he was involved in an automobile accident. At the time, Adams was driving his own automobile which was insured through Nationwide at his personal expense. Under the terms of the policy, Adams was entitled to 80 percent of his gross wages less any Workmen's Compensation Benefits he received. When Nationwide terminated payments to Adams, he brought suit seeking reinstitution of no-fault benefits. Id at 81, 426 A.2d at 1151.

In an attempt to reconcile an apparent conflict between Section 206 of the No-fault Act, 40 P.S. § 1009, 206 (1974) and the Workmen's Compensation Act, 77 P.S. § 48 (a) 1979, the court held in the affirmative and ordered reinstitution of no-fault benefits.

The case at hand is not an attempt to establish Baltimore Life Insurance Company's (plaintiff's employer) liability over and above its liability under the Workmen's Compensation Act, but rather, it seeks

recovery from the vehicle owner's own insurance carrier under the No-fault Act's §204(a)(2). Thus, we can see no reason why plaintiff cannot collect benefits under both acts.

The final issue which this court must then address, concerns the measure of benefits allowable under the No-fault Act.

In this case, the claimant's actual work loss is $1,413.40 per month. The No-fault Act limits the work loss recovery to $1,000 per month, and the insurer has contracted with the insured to provide coverage up to this amount.

In this case, also, the claimant was receiving $714.97 per month in Worker's Compensation. Under this circumstances, the claimant still has an actual "work loss" of $698.43 per month.

The No-Fault Act (Section 1009.206 provides that:

". . . all benefits or advantages . . . that an individual receives . . . from . . . Workmen's Compensation . . . shall be subtracted from loss in calculating net loss."

There is no doubt that the claimant is in fact suffering a work loss. The purpose of the No-fault Act (§ 1009.102(a)(3) is "the maximum feasible restoration of all individuals injured . . . in motor vehicle accidents" and to assure "every victim payment . . . of a reasonable amount of work loss . . ."

In light of this policy, there is no reason why the claimant's No-fault carrier ought not to cover the claimant's remaining "work loss" of $698.43. This amount is obviously within the $1,000 per month limit.

Defendant's argument relies on the reasoning in Turner v. SEPTA, 256 Pa. Super 43, 389 A.2d 291 (1978), Wagner v. National Indemnity Co., 266 Pa. Super 112, 403 A.2d 1061 (1980), and Adams v. Na-

tionwide Insurance Co., 426 A.2d 1150 (Pa. Super 1981).

On page 1152 of the Adams case, the court said:

"Today's case, however, is analogous neither to Turner, nor to Wagner, but rather to a situation hypothesized in Turner v. SEPTA. We said there ". . . This could only occur if the employee were injured while using his own car . . . in the course of conducting his employer's business."

Clearly, in the instant case, No-fault and Worker's Compensation are not exclusive remedies. The insured, since she was driving her own automobile, is entitled to look to her own insurer to cover her loss. The actual loss of income to the claimant was $1,413.40 per month less Worker's Compensation in the amount of $714.97 per month. The insurer is now responsible to cover the remaining loss up to $1,000 per month. In other words, plaintiff should recover $698.43 per month since this does not exceed the statutory limit.

And so, in construing the application of the Pa. No-fault Insurance Act and the Worker's Compensation Act to the facts in this case as agreed upon by both parties, the court will grant a Judgment on the pleadings in favor of plaintiff following the decision in Adams v. Nationwide Insurance Co., 285 Pa. Super. 79, 426 A.2d 1150, (1981), and interpreting the relevant statutes to mean that Worker's Compensation benefits will be subtracted from plaintiff's work loss rather than from the arbitrary $1,000 No-fault limit. The $1,000 limit (40 P.S. §1009.202(b) does not limit the total amount that a victim may receive from all sources, but only the amount a No-fault carrier must pay.

## DECREE NISI

Now, this September 21, 1981, plaintiff and defendant having admitted all the factual allegation

and requesting the court to render a decision and enter a summary judgment; the court finds in favor of plaintiff and against defendant. Defendant is, therefore, ordered to pay plaintiff $698.43 per month for the statutory period mandated by the Pa. No-fault Insurance Act. 40 P.S. § 1009.101.

The Clerk of Judicial Records shall notify all parties or their attorneys of the date of filing this adjudication and decree nisi. Unless exceptions are filed within ten days after notice of this filing, the Clerk of Judicial Records on praecipe shall enter the decree nisi as a final decree.