# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Maurice Schenck, | : | |
| Petitioner | : | |
| | : | No. 859 C.D. 2015 |
| v. | : | |
| | : | Submitted: April 8, 2016 |
| Pennsylvania Board of | : | |
| Probation and Parole, | : | |
| Respondent | : | |

BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

### *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED:  September 7, 2016

Maurice Schenck (Petitioner) petitions for review of the March 11, 2015 order of the Pennsylvania Board of Probation and Parole (Board), which denied Petitioner's request for administrative review and affirmed its December 2, 2014 decision to reinstate Petitioner as a convicted parole violator (CPV) to serve twenty-four months back time.

**Facts and Procedural History**

Petitioner is an inmate currently incarcerated at the State Correctional Institution (SCI) at Houtzdale.  On or about February 10, 2000, Petitioner was

sentenced to five to fifteen years' imprisonment for aggravated assault, criminal conspiracy, and robbery convictions.[1] Petitioner's respective minimum and maximum release dates were April 18, 2004, and April 19, 2014. (Certified Record (C.R.) at 1.)

On July 6, 2004, Petitioner was released on parole. Before his release, Petitioner signed conditions governing his parole, advising that "[i]f you are convicted of a crime committed while on parole/reparole, the Board has the authority, after an appropriate hearing, to recommit you to serve the balance of the sentence or sentences which you were serving when paroled/reparoled, with no credit for time at liberty on parole." (C.R. at 8.)

On December 26, 2004, Petitioner was arrested for possession of a controlled substance in a sufficient quantity and/or under sufficient circumstances to indicate intent to deliver,[2] was detained pending disposition of his criminal charges, and waived his right to a detention hearing. On March 7, 2005, the criminal charges were dismissed and, on March 16, 2005, Petitioner was released. (C.R. at 11, 13-15, 19-27, 93.)

On April 7, 2005, the Board issued a warrant to commit and detain Petitioner for violating parole when he committed a drug violation and, instead of revoking his parole, placed him in the Penn Capp program at the Joseph E. Coleman Center for drug use. After successfully completing the program, Petitioner was released from Penn Capp on July 6, 2005. (C.R. at 29, 56, 59, 93.)

---

[1] *See* Sections 903, 2702, and 3701 of the Crimes Code, 18 Pa.C.S. §§903, 2702, and 3701.

[2] *See* Sections 13(a)(16) and 13(a)(30) of The Controlled Substance, Drug, Device, and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-113(a)(16), (a)(30).

2

On November 3, 2005, the Board issued a warrant to commit and detain Petitioner for violating parole following his arrest by the Philadelphia Police Department on various drug charges. He was placed in state custody on November 16, 2005, pending disposition of the criminal charges. (C.R. at 34-35, 56, 93.)

On April 18, 2006, federal authorities indicted Petitioner on nine counts of federal criminal charges[3] and, on May 10, 2006, Petitioner was transferred to federal custody.[4] On October 11, 2006, the Board issued a warrant to commit and detain Petitioner pursuant to his indictment on the federal charges. On October 26, 2006, Petitioner was adjudicated guilty of the federal criminal charges and, on January 30, 2007, was sentenced to 120 months' imprisonment in federal custody. (C.R. at 37, 45-46, 51-54, 93, 95, 118.)

Prior to serving his federal sentence, Petitioner was returned to state custody on February 6, 2007. After approximately two months, he was transferred to federal custody to serve his federal sentence on April 4, 2007. The Board received verification of Petitioner's federal conviction on December 3, 2007. On July 25, 2014, Petitioner completed his federal sentence and he was returned to state custody on July 28, 2014. (C.R. at 38, 93, 101.)

On September 9, 2014, Petitioner was advised via a "Notice of Charges and Hearings" form that his revocation hearing would occur on September 15, 2014, at 9:00 a.m. at SCI-Graterford and requested that his revocation hearing be conducted by a panel. At the revocation hearing, Petitioner argued that the matter should be

---

[3] *See* 21 U.S.C. §841(a)(1) (possession of a controlled substance with intent to distribute); 21 U.S.C. §846 (conspiracy); 21 U.S.C. §860(a) (possession of a controlled substance with intent to distribute near a school).

[4] As a result of the federal criminal charges, the state criminal charges were nolle prossed on September 11, 2006. (C.R. at 41.)

dismissed on timeliness grounds. Specifically, Petitioner asserted that he had been sentenced in federal court in January 2007 and was returned to state custody for a revocation hearing to be conducted; however, a revocation hearing was not performed during the approximately two-month period he was in state custody prior to serving his federal sentence. According to Petitioner, the Board failed to perform a revocation hearing within 120 days of his return to a state correctional facility and, therefore, the revocation charges must be dismissed as untimely. The Board rejected Petitioner's argument, reasoning that the period that Petitioner was in federal custody did not count toward the 120-day limit and the revocation was not untimely because it was performed within 120 days based on a return date of July 27, 2014. By decision mailed December 8, 2014, the Board recommitted Petitioner as a convicted parole violator to serve twenty-four months back time based on the federal convictions.[5] (C.R. at 57, 61, 64-71, 77-86.)

On January 7, 2015, Petitioner filed a petition for administrative review of the Board's decision, arguing that his revocation hearing was untimely and, consequently, the revocation charges must be dismissed. Petitioner also argued that

---

[5] Although the decision mailed December 8, 2014 did not contain a recalculated parole violation maximum date, by decision mailed February 6, 2015, the Board recalculated Petitioner's maximum date to June 8, 2023. Petitioner filed a petition for administrative review of that decision, alleging that the Board failed to conduct a timely revocation hearing, failed to provide sufficient notice of the revocation hearing, and erred in recalculating his maximum parole date. By decision mailed April 8, 2015, the Board reversed its prior calculation and recalculated Petitioner's maximum date to May 14, 2023. (C.R. at 104-05, 108, 120-25.)

By decision mailed April 9, 2015, the Board dismissed Petitioner's timeliness challenge as unauthorized because he had previously requested administrative relief from the December 8, 2014 decision and the Board could not accept a second request. The Board also determined that Petitioner's sentence challenge was moot per the April 8, 2015 order recalculating his maximum date and advised him that he may file an administrative appeal/petition for administrative review of that decision. (C.R. at 128-29.)

the Board violated his procedural due process rights because it failed to provide him with sufficient notice of the revocation hearing; specifically, Petitioner alleged that the notice he was provided was prepared approximately seven years before the revocation hearing occurred and did not contain the exact time and date of the revocation hearing. (C.R. at 112-17.)

By decision mailed March 11, 2015, the Board affirmed its action mailed December 8, 2014, and dismissed Petitioner's appeal. (C.R. at 118-19.) Petitioner appealed that determination to this Court.

On appeal,[6] Petitioner argues that the Board erred because: it failed to conduct a timely revocation hearing; it failed to provide notice of the exact date and time of his revocation hearing; and it failed to award him sentence credit for time he spent in state custody from February 6, 2007, to April 4, 2007.[7]

Conversely, the Board argues that the revocation hearing was timely because it was performed within 120 days of the official verification date of Petitioner's federal conviction, excluding any time that Petitioner was unavailable while in federal custody. The Board also argues that Petitioner was provided with constitutionally adequate notice of the time, date, and location of the revocation

---

[6] In reviewing a recommitment decision, this Court's review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether the decision is in accordance with the law, and whether the Board violated any of the parolee's constitutional rights. *Smith v. Pennsylvania Board of Probation and Parole*, 81 A.3d 1091, 1093 n.1 (Pa. Cmwlth. 2013).

[7] In his appellate brief, Petitioner also asserts that the Board erred because it violated the primary jurisdiction doctrine when it permitted Petitioner to serve his federal sentence prior to serving back time on his original sentence and it failed to exercise its discretion and award him sentence credit for time spent at liberty on parole. However, the law is well settled that issues not raised in a petition for review are waived and will not be addressed by this Court. *Chesson v. Pennsylvania Board of Probation and Parole*, 47 A.3d 875, 878 (Pa. Cmwlth. 2012).

hearing. Moreover, the Board argues that Petitioner never appealed the decision recalculating his maximum parole date to May 14, 2023 and, therefore, his challenges to his sentence date cannot be heard for the first time in this Court's appellate jurisdiction and must be dismissed.

## Discussion

### Timeliness of Hearing

Petitioner first argues that the Board failed to conduct a timely revocation hearing. According to Petitioner, the 120-day period was triggered when he returned to state custody on February 6, 2007, and, therefore, the Board had until June 6, 2007, to conduct a revocation hearing, which it failed to do.

"When a parolee asserts that the Board held a revocation hearing beyond the 120-day period, the Board bears the burden of proving by a preponderance of the evidence, that the hearing was timely." *Vanderpool v. Pennsylvania Board of Probation and Parole*, 874 A.2d 1280, 1283 (Pa. Cmwlth. 2005). The Pennsylvania Administrative Code (Code) provides that:

> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:

> (i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

6

37 Pa. Code §71.4(1)(i).

The Code defines "official verification" as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa. Code §61.1. It is irrelevant whether the Board had knowledge of a parolee's conviction; the relevant inquiry is whether the Board received "official verification of a conviction." *Vanderpool*, 874 A.2d at 1284.

"[W]hen a convicted parolee is confined outside the jurisdiction of the Department and then is returned to it, the official verification *of return* triggers the 120 day period, even if official verification *of conviction* has not yet been received." *Montgomery v. Pennsylvania Board of Probation and Parole*, 808 A.2d 999, 1001 (Pa. Cmwlth. 2002) (emphasis in original) (internal citation omitted). The Code states that "[i]f the parolee is in custody in another state, or in Federal custody, the Board may lodge its detainer but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth." 37 Pa. Code §71.5(a). "[T]he effect of this provision is to toll the running of any period of time in which the Board is required to act until the parolee is returned to state custody." *Elliot v. Pennsylvania Board of Probation and Parole*, 458 A.2d 1068, 1069 (Pa. Cmwlth. 1983).

Here, under either computation, Petitioner's argument must fail. Even if Petitioner's return to state custody before serving his federal sentence and prior to the Board's receipt of the official verification of his federal conviction triggered the 120-day period, the Board held the revocation hearing within 120 days. Petitioner was returned to state custody on February 6, 2007, and was confined there for fifty-six days prior to his transfer to federal custody on April 4, 2007. The 120-day period

7

was tolled during the time that Petitioner was in federal custody. *Elliot*, 458 A.2d at 1069. After serving his federal sentence, Petitioner returned to state custody on July 28, 2014, and the revocation hearing occurred forty-nine days later, on September 15, 2014. As such, if February 6, 2007, is used as the date that triggered the 120-day period, the Board conducted the revocation hearing 105 days after that date, well within the 120-day limit.

Alternatively, if the date the Board received official verification of Petitioner's federal conviction is used, only forty-nine days elapsed before the revocation hearing was held. Therefore, under either standard, the Board performed a timely revocation hearing and Petitioner's argument must fail.

**Notice of the Revocation Hearing**

Petitioner also argues that the Board violated his right to procedural due process because it failed to provide him notice of the exact time and date of the revocation hearing.

Section 71.4(2)(i) of the Code states that, prior to a revocation hearing, a parolee will be notified of the right to a revocation hearing, the right to notice of the exact date of the hearing, and the right to be heard by a panel at the revocation hearing. 37 Pa. Code §71.4(2)(i).

Here, after his return to state custody following his federal sentence, Petitioner was advised via a "Notice of Charges and Hearings" form that his revocation hearing would occur on September 15, 2014, at 9:00 a.m. at SCI-Graterford and requested a panel hearing. The record indicates that Petitioner signed and dated the form as of September 9, 2014. (C.R. at 57, 61-62.) Although the form suggests that it was prepared prior to the date that it was signed by Petitioner, that has

8

no impact on the sufficiency of the notice. Importantly, both Petitioner and his counsel appeared at the revocation hearing and failed to object to the adequacy of the notice. Therefore, contrary to Petitioner's assertion, Petitioner was sufficiently advised of the date, time, and location of the revocation hearing.

### Sentence Credit for Time in State Custody

Finally, Petitioner avers that the Board erred when it failed to award him sentence credit for time that he spent in state custody because the criminal charges were ultimately nolle prossed.[8]

An issue not raised before the Board in an administrative appeal is waived for purposes of appellate review by this Court. *McCaskill v. Pennsylvania Board of Probation and Parole*, 631 A.2d 1092, 1094-95 (Pa. Cmwlth. 1993); *see also* Section 703 of the Administrative Agency Law, 2 Pa.C.S. §703(a).

Here, although the Board's decision mailed December 8, 2014, did not contain a recalculated maximum date, the Board recalculated Petitioner's maximum date to June 8, 2023, by decision mailed February 6, 2015. (C.R. at 104-05.) Petitioner petitioned for administrative review of that decision, alleging, *inter alia*, that the Board miscalculated his back time because he should have received credit for November 2, 2005 to May 10, 2006, the period he was in state custody prior to being federally charged, as well as for February 7, 2007, to April 2, 2007, for time spent in state custody prior to serving his federal sentence. (C.R. at 122.) By decision mailed April 8, 2014, the Board modified Petitioner's maximum sentence date from June 8,

---

[8] Specifically, Petitioner challenges two periods of custody: November 2, 2005, to May 10, 2006, and February 7, 2007, to April 2, 2007. However, the only period of custody that Petitioner identified in his petition for review was February 6, 2007, to April 4, 2007.

9

2023, to May 14, 2023. On April 9, the Board advised Petitioner, in response to his petition for review of its original recalculation and a follow-up correspondence, that:

> To the extent you object to the June 8, 2023 maximum sentence date, you seek relief from the recalculation decision that changed your maximum sentence date from June 8, 2023 to May 14, 2023. Thus, your objection to the prior maximum sentence date is now moot.
>
> Accordingly, your petition is DISMISSED AS UNAUTHORIZED to the extent you seek relief from the parole revocation decision mailed December 8, 2014. However, the recalculation decision mailed February 6, 2015 has been REVERSED in regards to the June 8, 2023 max date. If you wish to contest the new max date calculation, you may file an administrative appeal/petition for administrative review from the board action mailed April 8, 2015 (recorded 04/07/2015).

(C.R. at 128-29.)

Nevertheless, Petitioner failed to file a petition for review of the Board's April 8, 2014 decision recalculating his maximum sentence date notwithstanding the Board's express advisement. Additionally, Petitioner failed to petition for review of the Board's April 9, 2014 decision that determined his petition for review was unauthorized and his sentence challenge was moot. Therefore, because Petitioner failed to raise the issue of whether the Board properly awarded him sentence credit for time in state custody, the issue is waived and not subject to this Court's appellate review.

**Conclusion**

Petitioner's argument that the Board failed to perform a timely revocation hearing is unpersuasive because, under either computation, the revocation hearing was performed within 120 days. Similarly, we reject Petitioner's assertion

that he was not provided sufficient notice of the revocation hearing because he signed a form acknowledging the date, time, and location of the revocation hearing. Finally, Petitioner's argument that the Board erred in failing to award him sentence credit is waived because he failed to properly raise the issue before the Board.

Accordingly, the Board's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maurice Schenck,                     :
           Petitioner           :
                                       :    No. 859 C.D. 2015
           v.                         :
                                         :
Pennsylvania Board of        :
Probation and Parole,         :
           Respondent      :

## ***ORDER***

AND NOW, this 7th day of September, 2016, the March 11, 2015 order of the Pennsylvania Board of Probation and Parole is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge